UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURIE PEARSON

     *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL
SECURITY,

     *Defendant*.

_____/

CASE NO. 19-13506

HON. ROBERT H. CLELAND
DISTRICT JUDGE

HON. PATRICIA T. MORRIS
MAGISTRATE JUDGE

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF No. 12, 15)

## I.    RECOMMENDATION

Plaintiff Laurie Pearson challenges Defendant Commissioner of Social Security's final decision denying her claim for Title XVI Supplemental Security Income benefits ("SSI"). The case was referred to me for review. (ECF No. 3); *see* 28 U.S.C. § 636(b)(1)(B); E.D. Mich. LR 72.1(b)(3). For the reasons below, I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I recommend **DENYING** Plaintiff's Motion for Summary Judgment, (ECF No. 12), **GRANTING** the Commissioner's Motion, (ECF No. 15), and **AFFIRMING** the Commissioner's final decision.

1

## II.    <u>REPORT</u>

### A.    Introduction and Procedural History

Plaintiff's application for SSI was filed on January 10, 2017. (ECF No. 8-5, PageID.180.) For the purposes of SSI, she initially alleged she became disabled on November 1, 2016. (*Id.*) The Commissioner denied the claim. (ECF No. 8-4, PageID.100–03.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which occurred on July 17, 2018. (ECF No 8-2, PageID.57–73.) The ALJ issued a decision on October 31, 2018, finding that Plaintiff was not disabled. (*Id.* at PageID.39–52.) The Appeals Council denied review on September 30, 2019. (*Id.* at PageID.28–30.) Plaintiff sought judicial review on November 26, 2019. (ECF No. 1, PageID.1–4.) The parties have filed cross-motions for summary judgment and briefing is complete. (ECF Nos. 12, 15.)

### B.    Standard of Review

The Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The District Court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). "[T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286. (internal citations omitted).

## C.   Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our

listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or] her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.     ALJ Findings

Following two steps of the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 8-2, PageID.51.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from the application date of December 13, 2016[1]. (*Id.* at PageID.44.) At step two, the ALJ concluded that Plaintiff had medically determinable impairments of chronic obstructive pulmonary disease (COPD), dermatitis, bipolar disorder, and generalized anxiety disorder. (*Id.*) The ALJ determined that these impairments were not severe impairments or a severe combination of impairments. (*Id.*) Accordingly, Plaintiff was found to be not disabled. (*Id.* at PageID.51.)

### E.     Administrative Record

#### 1.     Overview of Medical Evidence

As a new patient, Plaintiff saw Dr. Ahmed Arif in July 2016. (ECF No. 8-7, PageID.320.) Plaintiff presented problems with coughing and shortness of breath, which developed within the last four weeks. (*Id.*) She had a history of diagnosis for COPD as of that July, and she has smoked since 1986. (*Id.* at PageID.321.) She uses inhalers. (*Id.*) Plaintiff's physical exam showed normal effort and sounds for breathing. (*Id.* at PageID.322.) The Doctor advised Plaintiff to continue current medications, to quit smoking, and for Plaintiff to be x-rayed and undergo a pulmonary function test. (*Id.*)

---

[1] The record here appears to have a date discrepancy, as the ALJ cited an application date that differs from the January 10, 2017 application date, elsewhere in the record. (*See* ECF No. 8-5, PageID.180; Pl. Br., ECF No. 12, PageID.441.) This error appears to be of no consequence.

The following month, Plaintiff returned to Dr. Arif and presented for COPD and rash. (*Id.*at PageID.316.) She described the COPD as a chronic problem that waxes and wanes. (*Id.*) Further, inhalers provided moderate relief. (*Id.*) Plaintiff's physical exam showed normal breathing sounds, with no wheezes, rhonchi, or rales; rash was noted. (*Id.* at PageID.317.) Plaintiff was advised to use medication for rash and to continue to use inhalers. (*Id.*)

In December 2016, Plaintiff was treated for eczema with Dr. Arif. (*Id.* at PageID.314.) Plaintiff now also stated that her COPD was a daily problem. (*Id.* at PageID.312.)  Examination showed her breathing continued to be normal, and rash was noted. (*Id.* at PageID.314.) Plaintiff was advised to use medication for eczema and to continue to use inhalers. (*Id.*)

In January 2017, Plaintiff was treated for eczema and leg spasms, which started one month ago. (*Id.* at PageID.308.) Her treatment was provided by Rachel Kennedy, a nurse practitioner ("NP"). (*Id.*) Plaintiff's physical exam continued to note normal breathing and rash. (*Id.* at PageID.310.) Plaintiff was advised of action and medication to take relative to her cramps and eczema. (*Id.*) In February 2017, with NP Kennedy, Plaintiff presented for an annual physical; COPD, now a problem every several days; eczema; and vitamin D deficiency. (*Id.* at PageID.301.) Here, Plaintiff had a PHQ-9 score of 17, showing signs of major depression[2]. (*Id.*) Plaintiff continued to have normal breathing and rash. (*Id.* at PageID.303.)

---

[2] Kurt Kroenke, *The PHQ-9 Validity of a Brief Depression Severity Measure*, J. Gen. Internal Med. (2001), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1495268/. ("In addition to making criteria-based

Plaintiff denied abdominal pain, fatigue, headaches, and numbness, or weakness. (*Id.* at PageID.301, 308, 312. *See also id.* at PageID.316, 320.)

Dr. Arif completed an RFC questionnaire on January 24, 2017. (*Id.* at PageID.275.) Dr. Arif stated he has seen Plaintiff monthly and only three times since July 2016. (*Id.* at PageID.272.) Regarding Plaintiff, her diagnoses included shortness of breath, COPD, tobacco abuse, and bilateral leg cramps. (*Id.*) Her prognosis is unknown. (*Id.*) Her symptoms include shortness of breath, fatigue, itching, aggravated by coughing and exertion. (*Id.*) Plaintiff's pain was characterized by "chronic, daily, smoking, leg cramps." (*Id.*) The clinical findings and objective signs are pulmonary shortness of breath and dry skin rash. (*Id.*) Her treatment was "Rx prescription". (*Id.*) Dr. Arif said it was unknown if Plaintiff's impairments have or would last at least twelve months. (*Id.*) He indicated Plaintiff's impairments are reasonably consistent with her symptoms and the described limitations. (*Id.* at PageID.273.)

Dr. Arif continued, indicating that Plaintiff would likely be off-task for 10% of the typical workday. (*Id.*) Further, Plaintiff could tolerate moderate stress because she has been diagnosed with COPD and rash. (*Id.*) Plaintiff can walk one city block, sit for more than two hours at a time, or stand for 45 minutes at a time—before needing to stop. (*Id.*) In an eight-hour workday, Plaintiff could stand/walk for less than two hours and sit for about two hours—total. (*Id.* at PageID.274.) Plaintiff must be able to walk five times for one minute each, in a workday. (*Id.*) Plaintiff will need one or two unscheduled five-minute

---

diagnoses of depressive disorders, the PHQ-9 is also a reliable and valid measure of depression severity. These characteristics plus its brevity make the PHQ-9 a useful clinical and research tool.")

breaks in a workday. (*Id.*) Plaintiff is limited to occasionally lifting/carrying up to 10 pounds, and rarely lifting/carrying up to 20 pounds. (*Id.*) Plaintiff is occasionally limited in performing head movements of looking down, left/right, and looking up. (*Id.*) Plaintiff can occasionally twist or bend, and rarely crouch or climb stairs/ladders. (*Id.* at PageID.275.) Plaintiff has no limit to reaching or fingering. (*Id.*) Plaintiff's impairments are likely to cause good days and bad days, and she will likely be absent for three days per month. (*Id.*)

For her SSI claim, Plaintiff was evaluated by Marianne Goergen, Psy.D., in March 2017. (*Id.* at PageID.342–46.) Plaintiff's complaints and history included COPD, rash, stomach cramps, leg pain, and headaches. (*Id.* at PageID.342.) Plaintiff rates her pain as 6/10 on a typical day, and it increases with sitting for long periods of time. (*Id.*) Plaintiff reported decreased sleep, hopeless feelings, thoughts of suicide, anxiety, and panic symptoms that last for up to an hour and 45 minutes. (*Id.*) Plaintiff has received treatment from Dr. Arif and NP Kennedy, and she is not under the care of a mental health professional. (*Id.*) Plaintiff has an eleventh-grade education and previously worked as a part-time secretary for a trailer park from 2004 to April 2005, and she previously worked as a dietary aid. (*Id.* at PageID.343) Plaintiff was jailed for four months 10 years ago because of conspiracy charges. (*Id.*) Plaintiff described her daily activities as including preparing light meals, taking breaks for personal care, and slowly doing chores; Plaintiff can shop for groceries and pay bills. (*Id.*)

Dr. Goergen described Plaintiff as intact with reality, having adequate levels of insight, having organized relevant thoughts, having no auditory or visual hallucinations,

and having a pleasant mood. (*Id.* at PageID.344.) Plaintiff had no abnormalities of posture or gait. (*Id.*) Dr. Goergen opined that Plaintiff "likely would relate well with coworkers and supervisors. Tasks should be simplified to start, gradually increasing in complexity." (*Id.*)

Plaintiff was evaluated by Dr. Harold Nims in April 2017. (*Id.* at PageID.353–61.) Plaintiff reported tightness and achiness in her legs, moderate bilateral knee pain, COPD, shortness of breath with moderate exertion, mild eczema, insomnia, ankle swelling, and chest tightness. (*Id.* at PageID.353.) Plaintiff reported she can walk one block before stopping, she has no problem sitting or standing, and she can climb one flight of stairs. (*Id.*) She can take care of her own needs, drive, shop, and chores as needed. (*Id.*) She denies any past hospitalizations. (*Id.*)

Continuing with Dr. Nims, Plaintiff denied a history of chest pain. (*Id.* at PageID.354.) She has COPD and shortness of breath with moderate-type exertion. (*Id.*) She walked with a normal gait. (*Id.*) She was stable in the standing, sitting, and supine positions. (*Id.* at PageID.355.) She was not short of breath in the examination. (*Id.*) She had mild areas of eczema on her forearms. (*Id.*) Examination of her head, neck, chest, cardiovascular, and abdominal systems were normal. (*See id.*) Her shoulders, elbows, and wrists, hands, and legs were non-tender. (*Id.*) Plaintiff had a normal grip strength. (*Id.*) There was no tenderness of the cervical or dorsolumbar spine. (*Id.* at PageID.356.)

Dr. Nims stated "[Plaintiff] is a 59-year-old Caucasian female whose upper and lower extremities have normal function, strength, and range of motion. [Plaintiff's] ability to perform work-related activities such as bending, stooping, lifting, walking, crawling,

squatting, carrying and traveling as well as pushing and pulling heavy objects is not impaired due to the objective findings described above." (*Id.* at PageID.356–57.)

Dr. Nims supplemental report showed no limits on Plaintiff's abilities, including normal reports or limits of reflexes, ambulation, and range of motion in joints. (*Id.* at PageID.358–61.) Plaintiff could climb stairs, but with consideration of her shortness of breath. (*Id.* at PageID.358.) At that time, a pulmonary function report could not be completed, because of Plaintiff's 180/90 blood pressure. (*Id.* at PageID.362.)

Plaintiff was evaluated by Dr. Michael Geoghegan in June 2017. (*Id.* at PageID.364–66.) Plaintiff reported a history of COPD and shortness of breath, but no hospitalizations. (*Id.* at PageID.364.) She uses inhalers. (*Id.*) Her examination showed normal head, skin, neck, chest, heart, and abdominal systems. (*Id.* at PageID.365.) Her range of motion of extremities was intact and full throughout. (*Id.*) She had 5/5 grip strength and full bilateral dexterity. (*Id.*) Her muscle strength was 5/5 and her motor and sensory function was intact. (*Id.*) Dr. Geoghegan's conclusion included a statement of refraining from tobacco use and that Plaintiff was able to complete all tasks without difficulty. (*Id.* at PageID.366.) Plaintiff's cardiac and pulmonary function were normal other than elevated blood pressure. (*Id.*) A pulmonary function report showed Plaintiff's post-bronchodilator forced vital capacity (FVC) was 1.39 L, 1.39 L, and 1.33 L across three tests, and her force expiratory volume at one second (FEV1) was .97 L, .96 L, and .98 L across three tests. (*Id.* at PageID.367.) Her pre-bronchodilator FVC was 1.53 L, 1.45 L, and 1.47 L across three tests, and her FEV1 was 1.07 L, 1.05 L, and 1.01 L. (*Id.*) This was interpreted to indicate moderately severe restriction and mild obstruction. (*Id.* at

PageID.368.) A "review of systems" document of check-boxes, which was completed by Plaintiff, showed Plaintiff's claims of weight loss, numbness/tingling in the arms/legs, headaches, instability when walking, swelling in ankles/feet, leg cramps when walking, shortness of breath, wheezing, frequent urination, joint aches, skin rash, and bruising easily. (*Id.* at PageID.372.)

Plaintiff returned to Dr. Arif in June 2017. (*Id.* at PageID.407–411.) Plaintiff presented for eczema, obesity, nicotine dependence, and COPD. (*Id.* at PageID.407.) She denied abdominal pain, chest pain, coughing, or weakness. (*Id.*) The physical examination showed that Plaintiff was obese, and she had normal cardiovascular, normal breathing, and normal abdominal systems. (*Id.* at PageID.409.) Some rash was noted. (*Id.*) The plan stated treatment for eczema, continue inhaler use for COPD, and advised or counseled on stopping smoking or weight loss. (*Id.* at PageID.410.)

Plaintiff's case was evaluated by state agency doctor R. H. Digby in June 2016. (ECF No. 8-3, PageID.79–93.) He determined Plaintiff has medically determinable impairments of COPD, dermatitis, depressive disorder, and anxiety, and all impairments were severe. (*Id.* at PageID.84.). Plaintiff's residual functional capacity included exertional limitations of occasionally lifting/carrying up to 50 pounds, and frequently lifting/carrying up to 25 pounds. (*Id.* at PageID.88.) Plaintiff could sit or stand for a total of six hours in an eight-hour workday. (*Id.*) Plaintiff had postural limitations of occasionally climbing stairs or ladders and frequently balancing, stooping, kneeling, crouching, or crawling. (*Id.*) Plaintiff had no manipulative limitations. (*Id.* at PageID.88–89.) Plaintiff had environmental limitations of avoiding concentrated exposure to extreme cold and fumes,

odors, dusts, gases, and poor ventilation. (*Id.* at PageID.89.) Plaintiff's ability to understand/remember detailed instructions, to carry out detailed instructions, and maintain attention and concentration were all moderately limited. (*Id.* at PageID.90.) Plaintiff's ability to respond appropriately to changes in the work setting were moderately limited. (*Id.* at PageID.91.) She is capable of understanding simple instructions, of making simple decisions, and of responding appropriately to coworkers and supervisors. (*Id.*)

In August 2017, Plaintiff presented to Dr. Arif problems of hypertension (new), COPD, and vitamin D deficiency. (ECF No.8-7, PageID.402.) Plaintiff denied chest pain, headaches, shortness of breath, coughing, fatigue, headaches, nausea, numbness, or weakness. (*Id.*) The physical examination showed systems of normal cardiovascular, normal breathing, normal abdominal, normal musculoskeletal, and normal neurological. (*Id.* at PageID.404.) Plaintiff was prescribed Norvasc for her hypertension. (*Id.*)

In October 2017, Plaintiff presented to Dr. Arif problems of hypertension, back pain, obesity, and vitamin D deficiency. (*Id.* at PageID.393.) Plaintiff denied chest pain, headache, shortness of breath, leg pain, numbness, or weakness. (*Id.*) Plaintiff's back pain was described as chronic and daily, aching, moderate, and located in the lumbar spine. (*Id.*) Her physical examination revealed in the lumbar spine area that there is reduced range of motion and tenderness. (*Id.* at PageID.395.) An SLR test was negative, and there was no motor or vascular deficit in the lower extremities. (*Id.*) Plaintiff is obese. (*Id.*) Other systems remain normal. (*Id.*) Past plans continued for medication. (*Id.* at PageID.396.)

In December 2017, Plaintiff presented to Dr. Arif problems of bronchitis (new), hypertension, vitamin D deficiency, and COPD. (*Id.* at PageID.388.) Plaintiff's bronchitis

began in the past seven days and symptoms include congestion and coughing. (*Id.*) Plaintiff denies abdominal pain, chest pain, fatigue, headaches, numbness, weakness. (*Id.*) Plaintiff's physical examination showed normal systems. (*Id.* at PageID.390.) She was directed to continue past plans and include a prescription to treat tracheobronchitis. (*Id.*)

In February 2018, Plaintiff presented to Dr. Arif for her annual physical exam, and for hypertension, COPD, vitamin D deficiency, nicotine dependency, and obesity. (*Id.* at PageID.380.) Plaintiff denied abdominal pain, chest pain, congestion, coughing, headaches, joint swelling, numbness, rash, or weakness. (*Id.*) Plaintiff showed minimal depression after screening. (*Id.* at PageID.381.) Plaintiff's physical exam showed normal systems, but she is obese. (*Id.* at PageID.382–83.) In March 2018, records indicated that Plaintiff was to be called because a chest x-ray shows emphysema. (*Id.* at PageID.378.)

Dr. Arif completed a medical source statement in May 2018. (*Id.* at PageID.430.) Here, Dr. Arif listed Plaintiff's diagnoses of eczema, shortness of breath, tobacco abuse, COPD, and bilateral leg cramps; and the prognosis was unknown. (*Id.* at PageID.427.) Plaintiff's symptoms were shortness of breath, fatigue, and itching. (*Id.*) Plaintiff's pain was characterized as "chronic, daily, smoking, leg cramps". (*Id.*) The clinical findings and objective signs are pulmonary shortness of breath and dry skin rash. (*Id.*) Treatment included "Rx prescription". (*Id.*) It was unknown if Plaintiff's impairments lasted or were expected to last 12 months. (*Id.*) Plaintiff's impairments are reasonably consistent with Plaintiff's symptoms. (*Id.* at PageID.428.) Plaintiff would be off-task for 10% of the workday. (*Id.*) Plaintiff could handle a job of moderate stress because of her COPD and rash. (*Id.*) At one time, Plaintiff can sit for more than two hours and stand for 45 minutes.

(*Id.*) In an eight-hour workday, Plaintiff could stand/walk for less than two hours and sit for about two hours. (*Id.* at PageID.429.) Plaintiff needs to walk five times for one minute each. (*Id.*) Plaintiff would need one to two unscheduled five-minute breaks per workday. (*Id.*) Plaintiff can occasionally lift/carry up to 50 pounds. (*Id.*) She can occasionally look down, look left/right, and look up. (*Id.*) She can frequently twist and stoop, but occasionally crouch/squat and climb ladders/stairs. (*Id.* at PageID.430.) She has no manipulative limitations. (*Id.*) She will have good/bad days, and she will likely miss three days of work per month. (*Id.*)

### 2.    Application Reports and Administrative Hearings

#### a.    Function Report

Plaintiff completed a function report on February 21, 2017 for her application for SSI. (ECF No. 8-6, PageID.233.) Plaintiff currently lives in a house alone, but her boyfriend will stay some days of the week. (*Id.* at PageID.225.) She stated her current condition limits her ability to work because she experiences shortness of breath, leg cramps, and she cannot walk far without taking breaks. (*Id.*) Further, she has stomach cramps and rash on both arms. (*Id.*)

Plaintiff's daily activities include drinking coffee, watching television, doing house chores, cooking dinner, bathing, dressing, and taking medication. (*Id.* at PageID.226.) She does not take care of other people or animals. (*Id.*) Before her current conditions, Plaintiff was able to walk five miles, ride a bike, and jump rope. (*Id.*) Plaintiff stated her conditions affect her ability to sleep because of tossing and turning and shortness of breath. (*Id.*)

Plaintiff does not have problems with personal care activities. (*Id.*) She does not need reminders for personal care or taking medicine. (*Id.* at PageID.227.)

Plaintiff prepares her own meals daily. (*Id.*) For her, making meals can take a couple hours with breaks in between. (*Id.*) Here, she cannot stand long because her legs cramp. (*Id.*) Plaintiff's chores include cleaning, dusting, laundry, trash, mop floors, and cleaning the bathroom. (*Id.* at PageID.227, 232.) She takes breaks here when tired. (*Id.* at PageID.227.) She does not need encouragement to do this work. (*Id.*)

Plaintiff goes outside every day. (*Id.* at PageID.228.) She can drive and go out alone. (*Id.*) She shops in stores about twice a month for a couple of hours. (*Id.*) Plaintiff can pay bills and count change, but she does not have a savings or checking account. (*Id.*) This has been unchanged by her current conditions. (*Id.* at PageID.229.) Plaintiff's hobbies include reading, puzzles, and watching television. (*Id.*) She reads every night. (*Id.*) She cannot sit for very long. (*Id.*)

Plaintiff spends time with family four times a month. (*Id.*) She will go out to sport events to see her grandchildren. (*Id.*) She does not need reminders to go places, and she does not need anyone to accompany her. (*Id.*)

Plaintiff said her condition affects her ability to stand, walk, sit, and stair climb. (*Id.* at PageID.230.) She explained that standing hurts her leg muscles, sitting will cramp her legs, climbing stairs is slow for her, and she can walk only half of a mile. (*Id.*) Plaintiff needs to rest for 5–15 minutes before resuming walking. (*Id.*) She cannot pay attention for long. (*Id.*) She can follow written instructions well, and she can follow spoken instructions after writing them down. (*Id.*) She can get along with authority figures, and she has not

been fired from a job for problems getting along with people. (*Id.* at PageID.231.) Plaintiff does not handle stress or changes in routine well. (*Id.*)

Plaintiff takes hydroxyzine, which has side-effects of dry mouth and sleepiness. (*Id.* at PageID.232.)

### b. Plaintiff's Testimony at the Administrative Hearing

Plaintiff testified that she was born September 22, 1957, and she has an eleventh-grade education. (ECF No. 8-2, PageID.60.) She was not currently working, nor worked since November 1, 2016. (*Id.* at PageID.60–61.) She stated her last job, where she made substantial gainful amounts, was as a dietary aide. (*Id.* at PageID.61.) There, she had the ability to lift 25–50 pounds. (*Id.* at PageID.62)

She stated she cannot work because of shortness of breath, sore arms, high blood pressure, and limited walking ability. (*Id.*) She has been breathing heavy for about one year, and the inhalers she uses provide some relief. (*Id.* at PageID.62–63.) Further, she had leg spasms where she takes muscle relaxers. (*Id.* at PageID.63.) Plaintiff cooks her own meals, but she takes extra breaks due to breathing problems. (*Id.* at PageID.64.) She does go out, but not very often. (*Id.*) And she does chores and rests throughout the day. (*Id.*)

Plaintiff stated she cannot lift a gallon of milk, and she can only walk about a block before taking a 10–15-minute break. (*Id.* at PageID.65.) She stated she feels dizzy after walking that far. (*Id.* at PageID.66.) Plaintiff stated she has COPD for about two years, and the condition has been getting worse. (*Id.* at PageID.67–68.) She takes valium for back pain, following a fall. (*Id.* at PageID.68.)

Plaintiff stated she has not worked since 2004, not because of health reasons, but because "they moved"[3]. (*Id.* at PageID.67.)

### c.  The Vocational Expert's ("VE") Testimony at the Administrative Hearing

The VE testified about the following update as to Plaintiff's work history: based on Plaintiff's testimony, her dietary aide work was medium exertion as performed. (*Id.* at PageID.71, citing ECF No. 8-6, PageID.265.)

The hypothetical presented by the ALJ assumed limitations of light work with occasional climbing ramps or stairs and frequent balancing, avoiding concentrated exposure to extreme cold and to respiratory irritants. (*Id.*) Plaintiff's past work would not be in that hypothetical. (*Id.*) The ALJ inquired of the matter of Plaintiff's treating physician saying Plaintiff would be absent for three days per month; the VE stated that is more than what employers would accept. (*Id.*) Next, the ALJ stated the state agency would limit Plaintiff to medium work, with occasional climbing ramps or stairs, and frequent balancing, and avoiding extreme cold and respiratory irritants. (*Id.* at PageID.71–72.) The VE indicated that Plaintiff's past work would be within that hypothetical. (*Id.* at PageID.72.) Finally, the VE's testimony was consistent with the *Dictionary of Occupational Titles*, except that absences were based on experience as a vocational counselor. (*Id.*)

Plaintiff's counsel inquired of the VE about absences or off-task time, and the VE indicated that absence of three days a month or being off-task 15% of the time would

---

[3] For clarification, Plaintiff stated *she* moved south, according to the occupational history in Dr. Nims report. (ECF No. 8-7, PageID.354.)

preclude work. (*Id.*) Further, a sit/stand option is not possible with medium work. (*Id.* at PageID.73.)

### F.   Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into categories: "acceptable medical sources" and "other sources." 20 C.F.R. §§ 404.1513 (amended March 27, 2017), 416.913 (amended March 27, 2017). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* §§ 404.1513(a), 416.913(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* §§ 404.1513(d), 416.913(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both acceptable and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When acceptable medical sources issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. §§ 404.1527 (eff. Sept. 3, 2013 to Mar. 26, 2017), 416.927 (eff. Aug. 24, 2012 to Mar. 26, 2017). Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* §§ 404.1527(d), 416.927(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. *Id.* §§ 404.1527(c) (eff. Sept. 3, 2013 to Mar. 26, 2017), 416.927(c) (eff. Aug. 24, 2012 to Mar. 26, 2017). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540–42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed her claim before March 27, 2017, she is entitled to the benefit of the treating-source rule. Under that rule, certain opinions of a treating physician receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. §§ 404.1527(d), 416.927(c)(2). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to a treating source's opinion in the written determination. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873,

875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640–41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

The claimant must provide evidence establishing his or her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2).

According to SSR 16-3p, an ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering his or her testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in the Social Security Ruling. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn from it—formerly termed a credibility determination—can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 16-3p, 2016

WL 1119029, at *2 (March 16, 2016). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 16-3p, 2016 WL 1119029, at *2 (March 16, 2016); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *6 (March 16, 2016).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071) (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). The absence of objective, confirming evidence obligates the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . .
        taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measure . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3), 416.929(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039–40 (6th Cir. 1994); SSR 16-3p, 2016 WL 1119029, at *7 (March 16, 2016).

21

G.     **Arguments and Analysis**

Plaintiff argues that the "ALJ erred by failing to consider objective medical evidence and Plaintiff's subjective complaints in her Step Two analysis." (ECF No. 12 at PageID.446.)

"Great care should be exercised in applying the not severe impairment concept," and an adjudicator who finds at least one severe impairment should continue the sequential evaluation process. SSR 85-28, 1985 WL 56856, at *4 (S.S.A. Jan. 1, 1985). Where an ALJ finds at least one severe impairment and considers a claimant's "severe and nonsevere impairments in the remaining steps of the sequential analysis," however, "[t]he fact that some of [the claimant's] impairments were not deemed to be severe at step two is legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *accord, e.g.*, *Albertson v. Comm'r of Soc. Sec.*, No. 15-12160, 2016 WL 5661590, at *5 (E.D. Mich. Sept. 30, 2016) ("A step two omission is of 'little consequence,' provided that the ALJ considered' all impairments, severe and nonsevere,' in crafting the RFC." (quoting *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003))); *Williams v. Comm'r of Soc. Sec.*, No. 14013677, 2015 WL 5719676, at *3 (E.D. Mich. Sept. 30, 2015) (invoking this principle). Previous appellate decisions on the severity determination have indicated

> In the Sixth Circuit, "the severity determination is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x. 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862. The test is used to "screen out totally groundless claims." *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).

22

*Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 822–23 (E.D. Mich. 2013).

 For this reason, Pearson's Step-Two argument lacks merit.

 To the extent that Plaintiff attempts to extend this argument into one challenging substantial evidence of disability, this argument would also lack merit. "The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). It is Plaintiff's burden of proof to prove that she is disabled in the first four steps of the sequential evaluation. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). *See also* 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled.")

 In Plaintiff's argument, Plaintiff identified particular evidence to take issue with the ALJ's finding. That evidence includes one pulmonary function test that was close to the limit to establish a listed impairment in Listing 3.02 (chronic respiratory disorders), a record referencing an x-ray that found emphysema, diagnoses of COPD that indicate it is chronic, Plaintiff's prescribed inhalers and her testimony of experiencing shortness of breath, and her chronic hypertension. Plaintiff's argument errs for the following reasons. "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Next, "[D]isability is determined by the functional limitations imposed by a condition, not

the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (citing *Higgs*, 880 F.2d at 863). Further, "[S]tatements about your pain or other symptoms will not alone establish that you are disabled." 20 C.F.R. § 416.929. Finally, it appears that Plaintiff is inviting the reweighing of the evidence in this case, but "the court will not reweigh the evidence considered by the ALJ." *Seibert v. Comm'r of Soc. Sec.*, 2019 WL 147066 at *2 (E.D. Mich. 2019) (citing *Big Ranch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013)).

The weight behind Plaintiff's assertions about the pulmonary function test, the x-ray reference, the diagnoses, and the subjective testimony is that these conditions must meet the *de minimis* hurdle of step two, meaning these conditions are more than slight abnormalities that minimally affect Plaintiff's work ability. The ALJ considered each of these, and he addressed each in the written decision. Particularly, the ALJ weighed each of these and the apparent inconsistent progress notes of her doctor appointments. For example, while Plaintiff had her COPD diagnosis, she also experienced normal breathing on physical examination. (*See, e.g.*, ECF No. 8-7, PageID.303, 310, 314, 322, 390, 404, 409.) This—and the existence of her conditions such as the shortness of breath, the emphysema, and the hypertension—all does not have consistent indications of work limitation.  The total medical evidence—the objective medical evidence, the supportable medical opinion[4], and other medical evidence—does not show Plaintiff's conditions caused a significant limitation in Plaintiff's ability to do basic work activities that has lasted

---

[4] Notably, Plaintiff does not make an argument about the weight given to the medical opinions in this case.

or was expected to last for one year. Plaintiff fails to raise record evidence that was not considered and weighed by the ALJ.

Plaintiff further identified that if she was limited to light work, per the discussed hypothetical at the hearing before the ALJ, that Plaintiff would be found disabled under the Medical Vocational guidelines. This matter is premature, as the RFC is an issue at steps four and five, and not at step two. SSR 96-8p. And the fact that the ALJ inquired of a light-work limitation, and that the VE responded, does not bind the ALJ to limiting Plaintiff to light work. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 247 (1987).

The ALJ in his decision considered record evidence related to records about Plaintiff's COPD, dermatitis, hypertension, back pain, bipolar disorder, and generalized anxiety disorder. Plaintiff's argument, here, does not address *all* of the conditions, and the analysis here will be limited to the conditions raised in her brief. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("we limit our consideration to the particular points that [Plaintiff] appears to raise in her brief on appeal.").

With the absence of error by the ALJ, Plaintiff was correctly found to be not disabled.

### H.    Conclusion

For these reasons, I would conclude that substantial evidence supports the Commissioner's denial of benefits, and I recommend **DENYING** Plaintiff's Motion, (ECF No. 12), **GRANTING** the Commissioner's Motion, (ECF No. 15), and **AFFIRMING** the Commissioner's final decision denying benefits.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  December 22, 2020

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge